# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHARLES ABDULKARIM &
SOUAD GHRABY,

    Plaintiffs,

v.

MEDTRONIC, INC.,

    Defendant.
_____/

Case No. 17-cv-12898

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [7]

### I. INTRODUCTION

Presently before the Court is Defendant's Motion to Dismiss. Defendant seeks to dismiss all three counts that Plaintiffs have filed against it. For the reasons that follow, the Court will grant Defendant's Motion to Dismiss.

### II. FACTUAL BACKGROUND

This case stems from the alleged defect of an electrosurgical generator (ESG) used during surgery on Plaintiff Charles Abdulkarim. Dkt. No. 1, pg. 18 (Pg. ID 18). Tyco Healthcare Group designed and manufactured the ESG. *Id.* Tyco then spun off its business to Covidien PLC in 2007. *Id.* Medtronic bought Covidien

in 2015, including its assets and liabilities. *Id.* On August 1, 2014, Plaintiff Abdulkarim underwent orthopedic surgery that included the use of the ESG at the Royal Oak Surgical Center. Dkt. No. 1, pg. 19 (Pg. ID 19). During the surgery, Plaintiff suffered non-superficial burns. *Id.* On July 28, 2017, Plaintiffs filed their complaint against Defendant in the circuit court for Oakland County. *Id.* at pg 17, 24 (Pg. ID 17, 24). Plaintiffs alleged negligence, breach of the implied warranty of fitness, and loss of consortium. *Id.* at 19–23 (Pg. ID 19–23). On September 5, 2017, Defendant removed the case to this Court. Dkt. No. 1. On September 12, 2017, Defendant filed the present Motion to Dismiss claiming Plaintiffs failed to plead sufficient facts to sustain their claims. *See* Dkt. No. 7. Plaintiffs responded on October 3, 2017, opposing the Motion. Dkt. No. 9. On October 18, 2017, Defendant replied.

### III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) governs motions to dismiss. The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). The facts need to make it more than "merely possible that the defendant is liable; they

must make it plausible." *Id.* "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Id.* A claim will be dismissed "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Inst., LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

### IV. DISCUSSION

**<u>Negligence</u>**

Plaintiffs allege that Defendant is liable in negligence for failing to design, label, manufacture, assemble, inspect, test, and market the ESG properly. Dkt. No. 1, pg. 20 (Pg. ID 20).

To prevail in a products negligence action in Michigan, a Plaintiff must show that: (1) the product was defectively manufactured; (2) the product reached the plaintiff in the same condition that it was in when it left the manufacturer; and (3) the defect proximately caused the plaintiff's injury. *See Prentis v. Yale Mfg.*, 365 N.W.2d 176, 186 (Mich. 1985); *see also Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 768 (E.D. Mich. 2010). A plaintiff is not required to point to a specific defect, but he must provide more than "mere supposition" to establish that there was a defect. *Meemic Ins. Co.*, 717 F. Supp. 2d at 771.

First, Plaintiffs must plead facts sufficient to allege that the ESG was defectively manufactured. Other courts have considered the adequacy of the defect described in the complaint for motions to dismiss.

The United States District Court for the District of Columbia held that a complaint was insufficient to state a defect where the plaintiff alleged a drug was "unreasonably dangerous" and hence defective. *Rollins v. Wackenhut Servs.*, 802 F. Supp. 2d 111, 123–24 (D.D.C. 2011). The court also noted that the complaint did not identify what about the drug made it defective. *Id.* at 123.

The Southern District of Ohio held a complaint did not sufficiently state a product defect where the complaint stated:

> 27. "The product . . . was defective in design and construction at the time it left the Defendants' control.
> 28. Defendants failed to design, manufacture, test, and control the quality of [the product] such that when it left the control of the Defendant, it deviated in a material way from the design specifications, formula or performance standards of the manufacturer."
>
> *Frey v. Novartis Pharms. Corp.*, 642 F. Supp. 2d 787, 790 (S.D. Ohio 2009).

The court stated that the plaintiffs failed to allege any facts that would allow the court to conclude a defect occurred and that the defect was the proximate cause of the injury. *Id.* at 795. The plaintiffs "simply provided a formulaic recitation of the elements of a claim under the statute." *Id.*

The Eastern District of Virginia has held a complaint insufficient when it did not articulate what the supposed defect was or how the defendants manufactured the product improperly. *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 505 (E.D. Va. 2013). The court held that "a bare allegation of a 'defect' is no more than a legal conclusion," and thus insufficient to survive a motion to dismiss. *See id.*

In its complaint, Plaintiffs state that Defendant was negligent by:

a. Failing to design the ESG in a way that prevented significant burns to patients;
b. Failing to incorporate a safety check to determine appropriate impedance prior to generative significant energy;
c. Failing to warn users, including physicians, that burns could occur if return electrodes were not securely applied;
d. Failing to design the device with an impedance warning that warned of impedance values that were out of the normal range with an audible and visual warning that cannot be muted or turned off;
e. Failing to utilize adequate alarm thresholds such that a poorly placed return electrode could lead to the energy return through a more dense area and cause a burn while the impedance remained lower than the alarm threshold;
f. Other acts or omissions to be determined over the course of discovery.

Dkt. No. 1, pg. 20 (Pg. ID 20). Plaintiffs' element letter "a" is similar to the complaint in *Frey* that stated the defendants failed to design the product in a way such that it deviated from the manufacturer's standards. It merely states that Defendant failed to design the ESG to prevent burns. It does not state what any specific defect was and how Defendants manufactured the ESG improperly. Therefore, this Court holds that the statement in letter "a" is not sufficient to

establish a defect. However, letters "b," "d," and "e" all state a specific type of defect. Unlike the complaints in *Rollins*, *Frey*, and *Ball*, they do more than recite the elements of a products negligence claim. They state specific alleged defects that the Court can identify. These statements, taken as true and in the light most favorable to Plaintiffs, are enough to make it plausible that the ESG had these defects. The Court holds that the complaint states facts plausible to believe that there was a defect in the ESG.

Next, Plaintiffs must also allege facts sufficient to show that the defect proximately caused the damages. Nothing in Plaintiffs' complaint alleges facts sufficient to support causation. Plaintiffs' complaint states, "Adulkarim underwent an orthopedic surgical procedure . . . .[e]lectrocautery was used during the operation. . . . Abdulkarim suffered a burn at the grounding site at the lateral flank position." Dkt. No. 1, pg. 19 (Pg. ID 19). The complaint also states that "[a]s a direct and proximate result of the aforementioned" negligent acts and breach of implied warranty, "Plaintiff suffered . . . injuries and damages." *Id.* at pg. 20, 22 (Pg. ID 20, 22). These stated facts do not make it plausible that any of the alleged ESG defects caused Plaintiff's burns. Plaintiffs' statements that Defendant's negligence and breach caused their damages are conclusory in nature. Nothing else in the complaint states any facts that might show causation. Although Plaintiffs' statements in their complaint may make it possible that defect(s) in the ESG caused

Mr. Abdulkarim's injury, they do not make it plausible. Therefore, the Court holds that Plaintiff's negligence claim must be dismissed for failure to plead facts sufficient to find causation.

**Failure to Warn**

Plaintiffs also allege a failure to warn theory. Dkt. No. 1, pg. 20, 20 (Pg. ID 20, 22). Plaintiffs' complaint states that Defendants should have warned "users, including physicians, that burns could occur if return electrodes were not securely applied." *Id.*

Under Michigan law, to establish that a product is defective due to failure to warn, a plaintiff must demonstrate that the defendant: "(1) had actual or constructive knowledge of the alleged danger, (2) had no reason to believe that consumers would know of this danger, and (3) failed to exercise reasonable care to inform consumers of the danger." *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 741 (6th Cir. 2000). Here, Plaintiffs' complaint fails to allege facts establishing that physicians would not know that an ESG has the potential to cause burns, element two.

Further, Michigan follows the sophisticated user doctrine. Under this doctrine, defendant manufacturers can assume that sophisticated users "have a mastery of the basic operation" of a product. *Brown v. Drake-Willock Int'l, Ltd.*, 530 N.W.2d 510, 516 (Mich. Ct. App. 1995). In *Brown*, the Michigan Court of

Appeals held that the defendants did not have a duty to warn of the dangers of formaldehyde. *Id.* The court stated that the product was purchased by physicians, who are sophisticated buyers. *See id.* Michigan law also states that "a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user." Mich. Comp. Laws 600.2947(4) (1996). Here, the ESG is a surgical machine provided to hospitals and doctors for their use. As *Brown* held, doctors are sophisticated users. So, under Michigan law, Defendant did not have a duty to warn.

In conclusion, this Court holds that Plaintiffs' failure to warn claim, based on either negligence or warranty, fails. The complaint fails to allege facts sufficient to demonstrate that Defendant had no reason to know that doctors would not know an ESG machine could cause burns. Defendant did not have a duty to warn because the ESG was provided to sophisticated users.

**Breach of Implied Warranty of Fitness**

Plaintiffs also allege that Defendant is liable for breaching the implied warranty of fitness. Dkt. No. 1, pg. 21 (Pg. ID 21). Plaintiffs claim Defendant breached its warranty by failing to design the ESG properly, failing to warn users that burns could occur if not properly used, failing to incorporate a safety check, and failing to use adequate alarm thresholds. *Id.*

Prevailing in a breach of implied warranty of fitness action requires a similar showing as a negligence action. *Prentis*, 365 N.W.2d at 186 (holding that a negligence theory and warranty theory require the same showing, except that negligence focuses on the defendant's conduct and warranty focuses on the fitness of the product). So to prevail, plaintiffs must show: (1) the product was defectively manufactured; (2) the product reached the plaintiff in the same condition that it was in when it left the manufacturer; and (3) the defect proximately caused the plaintiff's injury. *See id.*; *see also Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 768 (E.D. Mich. 2010).

Plaintiffs' breach of implied warranty claim alleges the same six elements as its negligence claim. Dkt. No. 1, pg. 21–22 (Pg. ID 21–22). Because both claims require the same analysis, this Court's conclusions as to Plaintiffs' negligence claim above are appropriate here. Therefore, this Court holds that Plaintiffs' breach of implied warranty claim also does not allege facts sufficient to support causation and should be dismissed.  b

**Loss of Consortium**

Plaintiff Souad Ghraby, the wife of Plaintiff Abdulkarim, alleges loss of consortium. Dkt. No. 1, pg. 23 (Pg. ID 23). Plaintiff states that due to Defendant's negligence, she has suffered a loss of her husband's society, companionship and

household services. *Id.* A loss of consortium claim "is derivative and contingent upon the injured spouse's recovery of damages for the injury." *Berryman v. K Mart Corp.*, 483 N.W.2d 642, 646 (Mich. Ct. App. 1992). Here, the Court has concluded that Plaintiff's negligence, implied breach of warranty, and failure to warn claims will be dismissed. So Plaintiff Ghraby's loss of consortium claim cannot stand. In conclusion, this Court dismisses Plaintiff's loss of consortium claim.

## V. Conclusion

For the reasons discussed herein, the Court will grant Defendant's Motion to Dismiss.

Dated: December 12, 2017

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge